IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| James King and Jan Kasmir, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) C/A No. 8:13-2264-TMC ) ) |
| v. | ) **OPINION & ORDER** ) |
| Carolina First Bank and The South Financial Group, Inc., a/k/a TD Bank, NA, | ) ) ) ) ) |
| Defendants. | ) ) |

In this putative class action, Plaintiffs challenge the manner in which Defendants Carolina First Bank ("Carolina First") and The South Financial Group, Incorporated ("South Financial"), now doing business as TD Bank, N.A. (collectively "TD Bank"), posted debit transactions. (ECF No. 22 - Am. Compl.).[1] Plaintiffs allege four state law claims: 1) breach of contract; 2) unconscionability; 3) conversion; and 4) unjust enrichment, and a federal claim under the Regulation E of the Electronic Transfer Act ("EFTA"), 12 C.F.R. § 205.17 ("Regulation E"). This matter is before the court on TD Bank's Motion to Dismiss. (ECF No. 25). Plaintiffs filed a response opposing the motion (ECF No. 29), and Defendants filed a Reply (ECF No. 30). Plaintiffs also filed a Supplemental Memorandum to provide the court with additional authority. (ECF No. 39). A hearing was held on this motion on May 22, 2014, and the court took the matter under advisement.

---

[1]Carolina First and South Financial were acquired by TD Bank on September 30, 2010. (Am. Compl. ¶ 1; Defs.' Mem. Supp. Mot. to Dismiss at 3 n.3, ECF No. 25-1 at 3 n.3). In a footnote in its memorandum supporting its motion to dismiss, TD Bank requested the court's assistance in properly identifying the parties. (Defs.' Mem. Supp. Mot. to Dismiss at 3-4 n.3, ECF No. 25-1 at 3-4 n.3). During the hearing, the court instructed the parties to attempt to resolve the issue, and if unsuccessful, TD Bank could file a motion for the court to consider.

## I. Background/Procedural History

The primary basis of Plaintiffs' state law claims are allegations that they were harmed by the manner in which TD Bank posted debit card transactions to their accounts. TD Bank posted credits and then debits, with the debits with the highest dollar amount being posted first. Plaintiffs contend that by posting the debits with the highest dollar amounts first, TD Bank increased their overdraft fees.

Plaintiffs were customers of Carolina First, which was owned by South Financial and acquired by TD Bank on September 30, 2010. (Am. Compl. ¶¶ 1-2). South Financial also operated Mercantile Bank ("Mercantile"), and all three, Carolina First, Mercantile, and South Financial, had substantially identical practices during the relevant time periods. (Am. Compl. ¶ 2).

A class action was brought against TD Bank regarding its overdraft practices in a multi-district litigation ("MDL"), and TD Bank settled for $62 million for class members for the period of December 1, 2003, through August 15, 2010. *In re Checking Acct. Overdraft Litigation*, 626 F.Supp.2d 1333 (U.S. Jud. Pan. Multi. Lit. June 10, 2009). (Am. Compl. ¶ 3). Carolina First was not part of TD Bank during this period. (Am. Compl. ¶ 4). Moreover, Plaintiffs allege that the practices continued even after Carolina First became part of TD Bank until at least June 2011 and, further Defendants did not obtain the affirmative consent required by the EFTA under Regulation E beginning in August 2010. (Am. Compl. ¶ 6). Thus, Plaintiffs seek to represent "all former customers of Carolina First, Mercantile, and South Financial that were improperly assessed overdraft fees and also a class of TD Bank customers who have been improperly assessed overdraft fees since the end of the class period covered by the TD settlement in *In re Checking Acct. Overdraft Litigation*." (Am. Compl. at ¶ 8).

Pursuant to Fed.R.Civ. P. 12(b)(6), TD Bank filed this motion to dismiss Plaintiffs' state

law claims on the grounds that they are preempted by the National Bank Act ("NBA"), 12 U.S.C. § 21 et. seq., because the posting of debits to customers' accounts falls within TD Bank's federally-authorized power to conduct the business of banking, and the Office of the Comptroller of the Currency's ("OCC") regulations preempt the state common law claims alleged here.  Even if not preempted, TD Bank contends that Plaintiffs have failed to state a claim under state law.[2]

## II. Applicable Law

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556  U.S. 662 (2009) (*quoting Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557).

In analyzing a motion under Rule 12(b)(6), the Court also considers Fed.R.Civ.P. 8(a)(2), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To satisfy the minimal requirements of Rule 8(a)(2), a complaint

---

[2] Defendants have asked Plaintiffs to voluntarily dismiss the remaining federal claim under the EFTA, Claim V in the Amended Complaint,  because they contend there is no factual basis for it. (Defs.' Mem. Supp. Mot. to Dismiss at 1 n. 1, ECF No. 25-1 1 n.2). Plaintiffs contend that discovery is needed before determining whether they have a viable claim under the EFTA.  (Am. Compl. at 4 n.3).

3

must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n. 3 (quoting Fed.R.Civ.P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.[3]

### III. Discussion

Under the Supremacy Clause, state laws that conflict with federal law are without effect. *Bonita Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 168 (1989).[4] Federal law may preempt state law in three ways: (1) by express language in a federal statute; (2) by implication from the "depth and breadth of a congressional scheme that occupies the legislative field"; or (3) by implication because of a conflict with a federal statute. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001). Conflict has been found when compliance with both laws is a "physical impossibility;" or when the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996).

"Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted). State laws of

---

[3] Ordinarily, in resolving a motion under Rule 12(b)(6), if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). However, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

[4] The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

general application continue to apply to national banks when "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Id.* at 33.

The NBA authorizes national banks to perform "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (2013). Congress delegated to the OCC the authority to define national banks' incidental powers by promulgating rules and regulations that possess the same preemptive effect as the NBA itself. *See* 12 U.S.C. 93a. "The OCC applies preemption principles derived from the United Stated Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section." 12 C.F.R. § 7.4002(d). In general, state laws on contract or torts "are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner*, et al. 517 U.S. 25 (1996)." 12 C.F.R. § 7.4007.

TD Bank argues the state law claims asserted here are preempted because those claims conflict with the NBA by "significantly impair[ing] a bank's exercise of an enumerated or incidental power." (Defs.' Mem. Supp. Mot. to Dismiss, ECF No. 25-1 at 15). TD Bank contends that the NBA grants national banks all incidental powers to carry on the "business of banking" and receive deposits, 12 U.S.C. § 24, and state law claims are preempted to the extent that they conflict with the NBA. TD Bank further contends that the power to carry on the business of banking and to receive deposits includes the power to post debits, which includes the power to establish a posting order of debits, *Id.* at 15, and national banks have the authority under OCC regulations to choose a posting order as part of its power to "charge its customers non-interest charges and fees." *Id*. at 16 (citing 12 C.F.R. § 7.4002(b)(2), as the OCC has interpreted in OCC Interp. Letter No. 1082, 2007 WL 3341502, at *2 (May 17, 2007) and OCC Interp. Letter No.

5

933, 2002 WL 31955273, at *4 (August 17, 2001)).

Plaintiffs contend that their claims are not preempted by federal law. Plaintiffs contend that Defendants erroneously assert that Plaintiffs seek to use state law to limit TD Bank's discretion under federal law to chose its posting order. (Pls.' Response Opp. Mot. to Dismiss at 7, ECF No. 29 at 7). Plaintiffs contend that they are not. Rather, Plaintiffs contend that they are attempting to recover for past conduct that was inconsistent with Defendants' contractual obligations as well as the assessment of improper overdraft fees assessed when accounts were not overdrawn. *Id*.

There have been two significant decisions on whether similar claims are preempted:

1) *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012); and 2) *In re Checking Acct. Overdraft Litigation*, 694 F.Supp.2d 1302 (S.D. Fla. 2010).

In *Gutierrez*, plaintiffs brought claims under a California consumer protection statute challenging the practice of Wells Fargo, a national bank, to post debits from highest to lowest. The court held that "[s]tate laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its . . . powers." *Gutierrez*, 2012 WL 6684748 at *12 (*quoting Martinez,* 598 F.3d at 555). The Ninth Circuit Court of Appeals held that federal law preempts the "unfair" business practices prong of California's consumer protection law, but federal law does not preempt California's consumer protection law in regard to fraudulent or misleading representations about the postings. *Gutierrez*, 704 F.3d at 716.

Specifically, the court held that 12 C.F.R. § 7.4002(b) preempted the plaintiffs' challenge to Wells Fargo's high-to-low posting order. *Id*. at 723–24. Citing OCC letters interpreting § 7.4002, the court reasoned that "federal law authorizes national banks to establish a posting order as part and parcel of setting fees, which is a pricing decision." *Id.* at 724. The court ruled that the

6

"district court is not free to disregard the OCC's determinations of what constitutes a legitimate pricing decision, nor can it apply state law in a way that interferes with this enumerated and incidental power of national banks." *Id.* at 725. The Ninth Circuit rejected Wells Fargo's argument that the plaintiff's fraudulent/misrepresentation claim was preempted by its deposit-taking power. *Id*. at 726-28. The court noted that the NBA and OCC provisions do not regulate deceptive statements and California's prohibition of misleading statements does not significantly interfere with the bank's ability to offer checking account services, choose a posting method, or calculate fees.  704 F.3d  at 727.

In *In re Checking Acct. Overdraft Litigation*, the MDL case, the plaintiffs challenged the defendants banks' practice of reordering debit transactions from high to low and other policies and practices, such as failing to notify the plaintiffs of their right to opt out of the overdraft protection program. *In re Checking Account Overdraft Litigation*, 694 F.Supp.2d 1302 (S.D. Fla. 2010). In the operative complaints, the plaintiffs alleged, inter alia, claims for: 1) breach of contract and the covenant of good faith and fair dealing;  2) violations of state consumer protection laws; 3)  unconscionability; 4)  unjust enrichment; and 5) conversion. *Id.* at 1308.

The court, citing *Barnett Bank* explained that in determining if the state law claims were preempted, the court had to look at whether they was an irreconcilable conflict. *Id.* at 1311. Citing *Watters,* 550 U.S. 12, the court explained that "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.* at 1311. The court also noted that in *Watters*, the Supreme Court stated that "federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general

7

purpose of the NBA." *Watters,* 550 U.S. at 12, 127 S.Ct. 1559.

The court found that the OCC did not expressly manifest its intent to preempt these state law claims in the language of the regulation and cited to the district court's decision in *Gutierrez*, 622 F.Supp.2d at 952 ("The only restraint on the discretion given to the payor under subsection (b) is that the bank act in good faith."). *In re Checking Account Overdraft Litigation*, 694 F.Supp.2d at 1313. The court noted that while § 7.4002 gives banks the right to charge overdraft fees, it does not authorize banks to ignore general contract or tort law. *Id.* Further, the court noted that § 7.4007(c) expressly provides that state laws on contracts and torts are "not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers." *Id.* The court concluded that, at the motion to dismiss stage, the allegations only incidentally affected the banks' exercise of their deposit taking power and were not preempted. *Id.* at 1313-14.

Defendants contend the MDL court relied heavily on the district court's decision in *Gutierrez,* 622 F.Supp.2d 946 (N.D. Cal. 2009), which was rejected by the Ninth Circuit on appeal, 704 F.3d 712 (9th Cir. 2012). Moreover, Defendants contend that the MDL court failed to grasp that posting order should be preempted because the claims impermissibly limit the discretion granted to a national bank under the NBA.[5]

Construing the Amended Complaint in the light most favorable to Plaintiffs, the court finds the court's decision in the MDL case to be persuasive. Plaintiffs' claims as alleged only incidentally affect TD Bank's deposit-taking powers and TD Bank has not established that refraining from the challenged wrongful conduct would prevent or significantly interfere with its

---

[5]Additionally, Defendants contend that the MDL's decision was also subsequently rejected by the Eleventh Circuit in *Baptista*, 640 F.3d 1196-1198. On a motion to reconsider, the MDL court extensively discussed the opinion in *Baptista* and persuasively held it did not mandate preemption. *In re Checking Acct. Overdraft Litigation*,797 F.Supp.2d 1312 (S.D. Fla.. 2011).

ability to engage in the business of banking. The court cannot conclude at this time that preemption applies as a matter of law. Accordingly, at this stage in the litigation, the court denies TD Bank's Motion to Dismiss based upon preemption.

### 2) Failure to State a Claim

Even if not preempted, Defendants contend that Plaintiffs have failed to state a claim as a matter of law because the posting order is allowed under the account agreements. The court addresses each claim below.

### A. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Claims

To establish a breach of contract, Plaintiffs must establish three elements: 1) a binding contract entered into by the parties; 2) breach or unjustifiable failure to perform the contract; and 3) damage as a direct and proximate result of the breach. *Bank v. How Mad, Inc.*, 2013 WL 5566038, * 3 (D.S.C. 2013) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602 (S.C.1962)).

TD Bank argues that Plaintiffs have failed to allege an actual breach because the Account Agreements expressly provide that debits will be posted from highest to lowest amounts and transactions would not be posted in the order in which they occur. (Defs.' Mem. Supp. Mot. to Dismiss Exs. A at 3 and C at 18; ECF Nos. 25-2 at 3; 25-4 at 18). Further, TD Bank contends that the implied covenant of good faith and fair dealing cannot be used to impose a different requirement than the express written account agreement provides. *Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995)(holding that there is no breach of covenant of fair dealing when a party has done what the contract provisions expressly give him the right to do).

Plaintiffs argue that under South Carolina law, there is an implied covenant of good faith and fair dealing in every contract where a party has discretion requiring that the party exercise its discretion in good faith. *See Seabrook Island Prop. Owners Ass'n v. Marshland Trust, Inc.*, 596 S.E.2d 380, 383 (S.C. 2004). Further, Plaintiffs contend that Account Agreement did not

9

expressly contemplate the assessment of overdraft fees on debit card transactions, and they were not given the opportunity to opt out of the overdraft program until August 2010. Plaintiffs also contend that an overdraft fee was assessed at times when there were enough available funds to cover the transaction.

As Plaintiffs contend, under South Carolina law, there exists in every contract an implied covenant of good faith and fair dealing. *Parker v. Byrd*, 420 S.E.2d 850, 853 (S.C.1992). However, the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract. *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. 2004). Instead, the implied covenant of good faith and fair dealing should be viewed "as merely another term of the contract at issue." *Id*. at 884 (internal citation omitted).

In the Amended Complaint, Plaintiffs allege that TD Bank violated the Account Agreement by instituting overdraft fee practices which were never disclosed, not reasonable, and not permitted by the Account Agreement, violating the Account Agreement and the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 91, 95) At this stage of the litigation, Plaintiffs have sufficiently alleged a breach of contract and/or the implied covenant of good faith and fair dealing claim to survive a motion to dismiss.

**B.  Unconscionability Claim**

Defendants contend that South Carolina does not recognize a claim of unconsionability because South Carolina recognizes unconscionability only as an affirmative defense to the enforcement of a contract. *See Wells Fargo Bank, N.A. v. Smith*, 730 S.E.2d 328, 333 (S.C. Ct. App. 2012)(holding "[t]he doctrine of unconscionability is used as shield, not a sword, and may not be used as the basis for affirmative recovery."). Further, Defendants argue even if allowed in this situation, Plaintiffs have failed to show "an absence of meaningful choice on the part of one

party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996). Defendants argue Plaintiffs have not alleged facts to establish the absence of a meaningful choice or that there was substantive unconscionability which usually involves oppressive terms such that no reasonable person would make them and no fair and honest person would accept them. At most, Plaintiffs allege TD Bank is a large, sophisticated entity.

Plaintiffs, relying on the decision in *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, contend that this argument has been rejected and that courts allow plaintiffs seeking a declaratory judgment to raise an unconscionability claim.

While Plaintiffs allege they are seeking a declaratory judgment in their Amended Complaint ( Am. Compl. ¶ 1), Plaintiffs are clearly seeking damages based upon this claim. (Am. Compl. ¶ 101). And in South Carolina, "the only remedies available for common law unconscionability are equitable. . . ." *Wells Fargo*, 730 S.E.2d at 333. Accordingly, the court dismisses this claim.

**C. Conversion Claim**

Under South Carolina law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.*, 437 S.E.2d 50, 52 (S.C. 1993). Additionally, "[m]oney may be the subject of conversion when it is capable of being identified." *SSI Med. Serv's, Inc. v. Cox*, 392 S.E.2d 789, 792 (S.C.1990).

Defendants contend that the economic loss rule bars a tort action where duties are created solely by contract. *E.g., Kennedy v. Columbia Lumber & Mfg. Co., Inc.*, 384 S.E.2d 730, 737 (S.C. 1989); *Eaton Corp. v. Trane Carolina Plains*, 350 F. Supp. 2d 699, 701 (D.S.C. 2004).

However, as Plaintiffs contend, they have challenged the validity of the contract at issue (Am. Compl., ¶¶ 115-122), and where no valid contract exists between parties, the economic loss rule does not apply.  *E.g., Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 784 (4th Cir. 2012). Reviewing the Amended Complaint, it appears Plaintiffs have alleged a claim for conversion sufficient to survive a motion pursuant to Rule 12(b)(6).

**D. Unjust Enrichment Claim**

Under South Carolina law, unjust enrichment is an equitable doctrine permitting the recovery of the amount a defendant has been unjustly enriched at the expense of the plaintiff. *Regions Bank v. Wingard Props., Inc.*, 715 S.E.2d 348, 356 (S.C. Ct. App. 2011).  Defendants contend that under South Carolina law an express contract precludes an unjust enrichment claim. Defendants also contend that Plaintiffs have failed to allege any facts in support of any injury as a result of these alleged bad practices.

Plaintiffs argue that while they cannot recover for both breach of contract and unjust enrichment, they can allege alternative theories of relief.  *See, e.g., Williams Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d 177, 181 (S.C. Ct. App. 2012) ("A breach of contract claim and quantum meruit claim can be alternative rather than inconsistent remedies").

Reviewing the Amended Complaint, the court agrees with Plaintiffs and declines to dismiss Plaintiffs' unjust enrichment claim at this stage of the litigation. *See In re Building Material Corp. of America Asphalt Roofing Shingle Products Liability Litigation*, C/A Nos. 12-82, 11-2000, 2013 WL 1282223 at *10 (D.S.C. Mar. 27, 2013)(holding "pleadings in the alternative are a common practice in the early stages of litigation."); *Burge Oils, Inc. v. M & F Mktg. Dev. LLC*, C/A No. 03–11559, 2005 WL 629489 at *3 (D.Mass. Mar.12, 2005) (denying motion to dismiss unjust enrichment claim even where such claim relied on the "same allegations that support the contract based claims . . . but states an alternative equitable theory of recovery if

the contract claims proved insufficient.").

## Conclusion

Based on the foregoing, only Plaintiffs' claim of unconsionability is dismissed. Accordingly, Defendant TD Bank's Motion to Dismiss (ECF No. 25) is **DENIED in part and GRANTED in part**.

**IT IS SO ORDERED.**

                                                                s/Timothy M. Cain
                                                               United States District Judge

Anderson, South Carolina
June 6, 2014